**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL H. WU and CHRISTINE T. WU, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:14-cv-05392 |
| | ) | |
| v. | ) | Judge Milton I. Shadur |
| | ) | |
| PRUDENTIAL FINANCIAL, INC., et al. | ) | Magistrate Judge Mary M. Rowland |
| | ) | |
| Defendants. | ) | |

**PRUDENTIAL DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS**

Defendants Prudential Financial, Inc., Prudential Insurance Company of America, the Pruco Life Insurance Company, AST Investment Services, Inc., Prudential Annuities, Inc., Prudential Annuities Distributors, Inc., Pruco Securities LLC, Global Portfolio Strategies, Inc., Prudential Bache Securities LLC[1], Prudential Investment Management Services LLC, Prudential Investments LLC, Prudential Investment Management, Inc., Prudential Retirement Insurance and Annuity Company, Jennison Associates LLC, Quantitative Management Associates LLC, John Robert Strangfeld Jr., Mark Brown Grier, Richard J. Carbone, Judy Ann Rice, Christine C. Marcks, Christopher Hagan, Michael Weissberger (collectively, the "Prudential Defendants") submit this Memorandum in support of their Motion to Dismiss Plaintiffs' Amended Complaint.

## INTRODUCTION

Plaintiffs are two individuals who, in April 2010, purchased a variable annuity allegedly sold by a registered representative of Citigroup and issued by a Prudential Defendant. They now claim that thirty defendants violated more than a dozen different securities laws in connection with that purchase. This Court previously dismissed *sua sponte* the initial complaint for failure to comply with Rule 8. Plaintiffs have now filed a second, equally incomprehensible Amended Complaint, with thirteen counts alleged against some or all of the Prudential Defendants.[2] This time around, the Court should dismiss with prejudice.

*First*, eight of Plaintiffs' counts (3, 4, 7, 8, 10, 11, 12 and 13) rely on statutes for which there is no private right of action. This, without more, compels dismissal.

*Second*, four of the five remaining claims that Plaintiffs asserted against the Prudential Defendants are time-barred. Plaintiffs sued more than four years after their purchase, and more

---

[1] One of the twenty-two named Prudential Defendants in this case is Prudential Bache Securities LLC. To the best of undersigned Defendants' knowledge, no company by this name exists. However, Defendant Prudential Financial, Inc. owns an indirect subsidiary named Prudential Equity Group, LLC, formerly known as Prudential-Bache Securities, Inc.
[2] Count 14 of the Amended Complaint is asserted solely against Citigroup defendants.

than two years after documents properly before this Court demonstrate that they were aware of their claims. Thus Counts 1, 2, and 5 must be dismissed based on a three-year statute of repose running from the purchase date and based on the applicable one-year statute of limitations. Count 6 also must be dismissed based on the applicable two-year statute of limitations. To the extent Count 7 purports to rely in part on a statute that could theoretically support a private right of action, Count 7 is also barred by a two-year statute of limitations.

*Third*, all of Plaintiffs' claims fail to meet even Rule 8 pleading standards. With respect to Count 9, the one remaining count asserted against the Prudential Defendants that does not fail for the grounds stated above, the Amended Complaint sets forth no conduct that could possibly be understood to constitute a violation. Count 9 purports to be addressed to Section 12(d)(1) of the Investment Company Act, a statute that applies where an investment company acquires a large stake in another company. Whatever it means to have "use(d) the robust capital protection scheme et al., which are/were not prescribed as necessary or appropriate **in the public interest or for the protection of investors,**" (Amended Complaint ¶ 93), neither that allegation nor anything else in Count 9 sets forth any possible basis to find a violation of Section 12(d) (1), much less any basis for liability to Plaintiffs on such grounds.

The rest of the Amended Complaint fares no better under Rule 8. In particular, the Amended Complaint pleads *no facts whatsoever* about seven Prudential Defendants—they are mentioned in passing in the "Parties" section and never again.

Moreover, Rule 9(b) standards govern all of Plaintiffs' fraud-based claims, but the Amended Complaint fails to plead the particular elements of those claims and instead sets forth nothing more than vague references to allegedly misleading documents and statements (including some statements allegedly dated years after Plaintiffs' purchase) with no explanation of whether Plaintiffs ever read or relied on any of them, or why the statements referenced are

false.  A good example is Plaintiffs' Section 10(b) claim (Count 6), which fails to plead scienter, reliance, and loss causation requirements and sets forth nothing to suggest that any Prudential Defendant engaged in fraud in connection with the purchase or sale of any security.

Plaintiffs cannot cure the above deficiencies by amendment.  No amendment can make viable claims based on statutes that do not provide a private right of action, or that are time-barred.  Moreover, having been given a second opportunity to meet Rule 8 and Rule 9(b) pleading standards (or engage counsel to help do so), Plaintiffs have filed an Amended Complaint that is equally as deficient as the initial Complaint, and that continues to rely upon an inapplicable statute.  For all of these reasons, the Court should dismiss this case with prejudice.

## SUMMARY OF THE ALLEGATIONS

According to the Amended Complaint, on March 29, 2010, Plaintiffs visited a Citibank branch and met with Xiao-mei Wang, a registered representative of Citigroup.  Am. Compl., Doc. 11 ¶¶ 34-35.[3]  On April 16, 2010, they purchased a variable annuity, which was issued by an unspecified Prudential entity.  *Id.* ¶ 43.  The Amended Complaint asserts that, in connection with that purchase, Ms. Wang "misrepresented Prudential VAs to Plaintiffs".  *Id.* ¶ 36.  However, the Amended Complaint never specifies what Ms. Wang allegedly misrepresented, why it was false, how it was relied upon, or how the Prudential Defendants were involved.  And the Amended Complaint contains no further information about the sale process.

---

[3] The Prudential Defendants do not admit the allegations in the Amended Complaint but "familiar Rule 12(b)(6) principles require a district court to accept all of plaintiff's well-pleaded factual allegations as true, and to draw all reasonable inferences from those allegations in plaintiff's favor." *Warrick v. Roberts*, No. 13 C 8326, 2014 WL 3828287, at *1 (N.D. Ill. Aug. 5, 2014) (Shadur, J.).  However, "it is equally true that legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

Instead, the balance of the pleading contains allegations that are difficult or impossible to understand, and which have no apparent connection to Plaintiffs' purchase. For instance, the Amended Complaint contains numerous, seemingly random, quotations from vaguely described brochures (*e.g., id.* ¶¶ 39-43), unspecified "sale materials" (*e.g., id.* ¶¶ 48), and various individuals (*e.g., id.* ¶¶ 50-57). However, Plaintiffs never allege that they received or relied on any of those statements,[4] and never explain why the statements are false. Similarly, the Amended Complaint contains incomprehensible allegations about a "scheme" involving "hedged entities," "arbitrage," private placements," "junk bonds" and similar matters. *E.g., id.* ¶ 1 (referring to "a robust quarterversary 2-stage arbitrage-based defined benefit risk transfer ("DBRT") embezzlement scheme founded and operated by PFI et al."). But Plaintiffs never explain what any of this verbiage means, what it has to do with their purchase, or how it relates to any asserted wrongdoing.

On the basis of those allegations, Plaintiffs have sued 30 defendants, asserting 14 causes of action, and demanding relief including but not limited to a declaratory judgment, permanent injunction, disgorgement, penalties, accounting, records preservation, and damages.

## PROCEDURAL HISTORY

Beginning in late 2011, Plaintiffs sent letters to certain Prudential Defendants containing allegations worded very similarly to those appearing in the Amended Complaint, including

---

[4] The Court should not presume that Plaintiffs received and relied on all of the cited statements in making their purchase. *See, e.g., Boris v. Wal-Mart Stores, Inc.*, No. CV13-07090, 2014 WL 1477404, at *9 (C.D. Cal. Apr. 9, 2014) ("absent an express allegation that [plaintiff] viewed the misleading content," Rule 9(b) prohibited the Court from inferring reliance); *Bailey v. Linsco/Private Ledger Corp.*, 136 F.R.D. 11, 14 n.7 (D. Me. 1991) (refusing to infer allegations essential to elements of fraud claim "where none actually exist," because doing so "may undermine the degree of specificity required by Rule 9(b)"). In any case, according to the Amended Complaint, some cited statements are dated *after* the purchase. *E.g.* Am. Compl. ¶¶ 55-57 (citing materials from 2011-2012).

allegations about unauthorized transfers from their account. *See, e.g.*, Initial Complaint, Doc. 1 ("Compl.") Exs. F, L-1, and N.[5]

More than two years later, on July 15, 2014, Plaintiffs filed this lawsuit *pro se*, and asked the Court to appoint counsel. (Compl., Doc. 1; Mot. For Attorney Rep., Doc. 5). On July 24, the Court declined to appoint counsel, and *sua sponte* dismissed the complaint for failure to comply with Rule 8. (Doc. 9). The Court also instructed Plaintiffs to hire counsel before filing an Amended Complaint, or to seek a status conference. *Id.* Plaintiffs did neither. Instead, they filed an Amended Complaint (Doc. 11).

## ARGUMENT

### I. EIGHT CLAIMS HAVE NO PRIVATE RIGHT OF ACTION (COUNTS 3, 4, 7, 8, 10, 11, 12 AND 13)

For a private plaintiff to state a claim under the federal securities laws, there must be a private right of action. Otherwise, dismissal with prejudice is proper. *See Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (affirming dismissal of plaintiff's Securities Act § 17(a) claim with prejudice for lack of a private right of action); *Abbell Credit Corp. v. Banc of Am. Sec., L.L.C.*, No. 01 C 2227, 2001 WL 1104601, at *4 (N.D. Ill. Sept. 17, 2001). Most of Plaintiffs' claims arise under statutes that do not provide a private right of action.

Count 3: There is no private right of action for Sections 17(a)(1)-(3) of the Securities Act or Section 34(b) of the Investment Company Act. *See Sears*, 912 F.2d at 893 (Securities Act); *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 117 (2d Cir. 2007) ("the text and the structure of

---

[5] The Court may consider documents that are either attached to the complaint or incorporated by reference. *Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Allscripts-Misys Healthcare Solutions, Inc.*, 778 F. Supp. 2d 858, 880 n.9 (N.D. Ill. 2011). These letters, which were attached to the initial Complaint, are also incorporated by reference in the Amended Complaint. *See* Am. Compl. ¶¶ 52 (referencing Compl. Ex. L-1); 56 (referencing Compl. Ex. F); 57 (referencing Compl. Ex. N).

the ICA reveal no ambiguity about Congress's intention to preclude private rights of action to enforce § 34(b)").

Count 4: The Securities Exchange Act does not provide for a private right of action to enforce Section 5. *Jacobs v. Bremner*, 378 F. Supp. 2d 861, 866 (N.D. Ill. 2005) (Shadur, J.) (where the "plain statutory text" does not contain a private right of action, "the inquiry as to whether a private right of action exists ends there and must be answered in the negative"). Moreover, the Seventh Circuit has held that related provisions governing exchange registration do not give rise to an implied private right of action. *See Spicer v. Chi. Bd. of Options Exch., Inc.*, 977 F.2d 255, 260-61 (7th Cir. 1992) (no private right of action under § 6 of the Securities Exchange Act).[6]

Count 7: There is no private right of action under Section 206 of the Investment Advisors Act. *See Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19-20 (1979); *Levine v. Futransky*, 636 F. Supp. 899, 901-02 (N.D. Ill. 1986). No private right of action arises under Rule 10b-10 either unless the alleged conduct also violates Section 10(b) of the Securities Exchange Act. *See Morris v. Wachovia Secs., Inc.*, 277 F. Supp. 2d 622, 630 (E.D. Va. 2003); *see also Arst v. Stifel, Nicolaus & Co.*, 86 F.3d 973, 977 (10th Cir. 1996). Plaintiffs claim that they did not receive certain details in timely trade confirmations as required by Rule 10b-10, Am. Compl. ¶ 87, but they have not (and could not) allege that this violates Section 10(b).

Count 8: There is no private right of action for Section 13(b)(2) of the Securities Exchange Act and Rules 13b2-1 and 13b2-2 thereunder. *See Shields ex rel. Sundstrand Corp. v. Erickson*, 710 F. Supp. 686, 688 (N.D. Ill. 1989).

---

[6] This claim also fails because there is no allegation that the alleged rebalancing transactions took place on an "exchange," under the 1934 Act. 15 U.S.C. § 78c(a)(1).

Count 10: The Investment Company Act provides a private right of action in only two narrow circumstances that Plaintiffs have not alleged here — against a fund's advisor for violations of fiduciary duty, or for insider short-swing profits. *See* 15 U.S.C. § 80a-35(b); *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 615 F.3d 1106, 1122 (9th Cir. 2010). Other than these two inapplicable circumstances, the Act provides only for enforcement by the Securities and Exchange Commission. 15 U.S.C. § 80a-41. "Because the plain statutory text . . . provides a right of action only for the SEC, the inquiry as to whether a private right of action exists ends there and must be answered in the negative." *Jacobs*, 378 F. Supp. 2d at 866.[7]

Count 11: As noted above, the Investment Company Act provides very limited private rights of action that are inapplicable to Plaintiff's allegations in Count 11. *See* 15 U.S.C. § 80a-35(b); *Northstar*, 615 F.3d at 1122; *see also Smith v. Oppenheimer Funds Distrib., Inc.*, 824 F. Supp. 2d 511, 522-23 (S.D.N.Y. 2011) (no private right of action under Section 38 or Rule 38a-1 of the Investment Company Act).

Count 12: As noted above, the Investment Company Act provides very limited private rights of action that are inapplicable to Plaintiffs' allegations in Count 12. *See* 15 U.S.C. § 80a-35(b); *Northstar*, 615 F.3d at 1122.[8]

Count 13: There is no private right of action for Section 206 of the Investment Advisors Act. *See Transamerica*, 444 U.S. at 20 ("In view of these express provisions for enforcing the

---

[7] This claim also fails because Section 19 of the Investment Company Act restricts an investment company's available sources for dividend payments. 15 U.S.C. § 80a-19. The Amended Complaint contains no allegations supporting a claim that, even if applicable, any defendants violated this rule.

[8] This claim also fails because Section 37 of the Investment Company Act merely provides the SEC with authority to enact rules and regulations to enforce the Investment Company Act. 15 U.S.C. § 80a-37. Simply put, there is nothing to violate in Section 37.

duties imposed by § 206 [of the Investment Advisors Act], it is highly improbable that Congress absentmindedly forgot to mention an intended private action").[9]

## II. FIVE CLAIMS ARE TIME-BARRED (COUNTS 1, 2, 5, 6 AND 7)

The Amended Complaint establishes that Counts 1, 2, 5, 6 and 7 are barred by the applicable statute of limitations and repose. Therefore, these claims must be dismissed with prejudice. *See Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995) ("if a plaintiff pleads facts that show its suit barred by a statute of limitations, it may plead itself out of court under a Rule 12(b)(6) analysis"); *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 2011 WL 529390, at *5 (N.D. Ill. Feb. 7, 2011) *aff'd*, 665 F.3d 930 (7th Cir. 2012) (dismissing with prejudice because the statute of limitations barred plaintiff's claim).

Statute of Repose: Counts 1, 2, and 5 are barred by a three-year statute of repose that runs from purchase and cannot be tolled. *See* 15 U.S.C. § 77m; 15 U.S.C. § 78(i)(f); *see CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2183 (2014) *reh'g denied*, 13-339, 2014 WL 3891554 (U.S. Aug. 11, 2014) ("Statutes of repose . . . generally may not be tolled, even in cases of extraordinary circumstances beyond a plaintiff's control."). Specifically, the claims arise from Plaintiffs' April 2010 purchase of a variable annuity. *See* Am. Compl. ¶ 43. However, Plaintiffs sued in July 2014, over four years later.

Statute of Limitations: Counts 1, 2, 5, 6 and 7 are barred by the one or two-year statutes of limitations applicable to each. *See* 15 U.S.C. § 77m (one-year statute of limitations for Counts 1-2); 15 U.S.C. § 78i(f) (one-year statute of limitations for Count 5); *see also Merck & Co. v.*

---

[9] This claim also fails because Section 206 and Rules 206(4)-2, 206(4)-6(a) and 206(4)-6(c) apply only to investment advisors who "for compensation, engage[] in the business of advising others . . . as to the value of securities or as to the advisability of investing in . . . securities." 15 U.S.C. 80b-2(a)(11). This is inapplicable to the Prudential Defendants' conduct here.

*Reynolds*, 559 U.S. 633, 637 (2010) (two-year statute for 10(b) action, Counts 6 and 7). The statute of limitations runs from when Plaintiffs did discover, or when a "reasonably diligent plaintiff would have discovered," the facts constituting the alleged violation. *See Merck*, 559 U.S. at 637.

Here, the Amended Complaint establishes that Plaintiffs knew the facts constituting the alleged violation more than two years before they filed suit. Specifically, materials properly before the Court show that Plaintiffs were aware of their claims by, at latest, December 2011 (*i.e.,* more than two years prior to July 2014). By that time, Plaintiffs had sent letters containing nearly-identical allegations of wrongdoing. For example, Plaintiffs discussed their concerns with reallocations and transfers relating to their annuity at issue in early December 2011. *See* Compl. Ex. L-1 (Dec. 8, 2011 letter from Prudential to Plaintiffs regarding "concerns with the allocations on the . . . annuity contract."). Similarly, another letter from Prudential dated March 2012 responds to claims regarding alleged "unauthorized transactions" and misrepresentations — the same issues that Plaintiffs appear to be addressing in this action. *See* Compl. Ex. F. Thus, their claims are time-barred.

Furthermore, post-purchase statements cannot give rise to claims under Section 10(b). *See Zerger v. Midway Games, Inc.*, 2009 WL 3380653, at *4 (N.D. Ill. Oct. 19, 2009). Any alleged misstatements in post-purchase correspondence, like the letters discussed above, would not create additional 10(b) actions. The statute of limitations on any 10(b) claim runs only from statements or actions leading to the original 2010 transaction, making Counts 6 and 7 untimely as argued above.

## III.  IN ANY EVENT, THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF (ALTERNATIVE BASE FOR DISMISSAL OF ALL COUNTS)

### A.  The Amended Complaint Pleads No Facts Pertaining to Seven Prudential Defendants

The Amended Complaint contains no factual allegations whatsoever concerning any alleged wrongdoing by Prudential Annuities Distributors, Inc., Pruco Securities LLC, Prudential Bache Securities LLC, Prudential Investment Management Services LLC, Prudential Retirement Insurance and Annuity Company, Richard Carbone, or Judy Ann Rice. These seven Defendants are mentioned only in the "Parties" section of the Amended Complaint containing generic descriptions of their business or positions. *See* Am. Compl. ¶¶ 10, 11, 13, 14, 17, 26, 27. This does not satisfy Rule 8. *See Ryan v. Mary Immaculate Queen Ctr.*, 188 F.3d 857, 860 (7th Cir. 1999) (affirming dismissal of claims against defendant whose particular conduct was not alleged because "notice implies some minimum description of the defendant's complained-of conduct"). Without any allegations about what any of these individuals and entities actually did, Plaintiffs cannot state any claims against them. "Allegations so devoid of factual content do not 'allow the court to draw the reasonable inference that [a party] is liable for the misconduct alleged.'" *Royal Adhesives & Sealants, LLC v. Adv. Mfg. Techs., Inc.*, 2014 WL 1568702, at *3 (N.D. Ill. Apr. 17, 2014) (quoting *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013)). Without more, these parties should be dismissed from the case.

### B.  The Amended Complaint Otherwise Fails To Satisfy Pleading Standards

The Amended Complaint also fails to comply with Rule 8 and Rule 9(b) in additional respects. Rule 8 demands that Plaintiffs plead a case that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires "more than the mere possibility of misconduct," or "facts that are merely consistent with a defendant's liability." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009) (internal quotation marks omitted). Plaintiffs must plead "some

- 10 -

specific facts to support the legal claims asserted in the complaint," and "must give enough details about the subject-matter of the case to present a story that holds together." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (internal quotation marks omitted).

Moreover, Plaintiffs describe their claims as "involv[ing] fraudulent offers, sales, and managements" and an "embezzlement scheme." Am. Compl. ¶ 1. Plaintiffs further allege "misrepresentations," manipulation of securities prices, untrue statements of fact, and the use of "devices, schemes, or artifices to defraud." Am. Compl. ¶¶ 1, 44, 48, 53, 54, 55, 56, 57, 72, 75, 102, 105. Accordingly, Rule 9(b) applies. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507-08 (7th Cir. 2007) (where pleading was "riddled with references to fraud, showing that this theory pervades their entire case," Rule 9(b) applied even though plaintiff did not assert "fraudulent torts" claims); *see also Sears*, 912 F.2d at 893 ("It is well established that Rule 9(b) . . . governs claims based on fraud and made pursuant to the federal securities laws."); *Antelis v. Freeman*, 799 F. Supp. 2d 854, 863 (N.D. Ill. 2011) (stating that because plaintiff's claim "deals with the Exchange Act, the sufficiency of Plaintiff's claim is . . . governed by Rule 9(b)"). Rule 9(b) requires Plaintiffs to state "the circumstances constituting fraud or mistake" with "particularity" and provide the "who, what, when, where, and how." *See Borsellino*, 477 F.3d at 507-08 (internal quotation marks omitted); *see also Sears*, 912 F.2d at 893 (affirming dismissal of plaintiff's Securities Exchange Act claims where "the plaintiffs fail to state in any detail *what* misrepresentations were made by the defendant, *to whom* these misrepresentations were made,

*when* these misrepresentations were made, or *how* these misrepresentations furthered the alleged fraudulent scheme.").[10]

The Amended Complaint fails these tests. The pleading is, by any fair reading, largely incomprehensible. For example, it alleges misstatements in some unspecified "PICA Brochure" and "PIM Brochure," without any description of what these documents are, what they say, or any indication of whether Plaintiffs actually received them. *See* Am. Compl. ¶¶ 40-41. Plaintiffs allege that "PAI never publicly publishes firm quotes" for two bond portfolios, but never states how these funds are related to this action, or if Plaintiff ever invested in either of them. *See* Am. Compl. ¶ 44. Additionally, for several defendants (PLIC, PIM, Strangfeld, Grier, Marcks, Hagan, and Weissberger), the only allegation is the simple assertion that they "misrepresented" something—in some cases *years after the purchase—*without pleading any facts to show that the alleged statements were false. *See, e.g.*, Am. Compl. ¶¶ 48, 56, 57. These are just examples. Succinctly put, there is a failure of basic notice and the Prudential Defendants have, literally, no idea what misconduct is being asserted. This falls short of Rule 8 pleading standards. Moreover, nothing anywhere in the Amended Complaint supplies the who, what, when, where, and how of any fraudulent conduct as required under Rule 9(b).

The remedy for these pleading failures is dismissal with prejudice. The Court already dismissed *sua sponte* a prior pleading (the initial complaint) for failure to comply with Rule 8, and suggested that Plaintiffs obtain counsel. They declined, and filed another complaint. Thus, the Court and Defendants now confront a situation where "each iteration of the complaint" is so convoluted and vague that it is "impossible for the defendants to know what wrongs they were

---

[10] Plaintiffs' *pro se* status does not relax the Rule 9(b) pleading standard. *See Davit v. Davit*, 173 F. App'x 515, 517 (7th Cir. 2006) (affirming dismissal of *pro se* plaintiff's complaint under the heightened pleading standard of 9(b) because of the "factual particularities" the trial court "found missing, even after [plaintiff] amended his complaint").

accused of committing," and the complaint includes a "number of obviously frivolous claims" including the alleged violation of statutes that do not provide a private right of action. *Stanard v. Nygren*, 658 F.3d 792, 793-95 (7th Cir. 2011). Under such circumstances, Defendants and this Court "need not try to fish a gold coin from a bucket of mud;" "[i]f neither the adverse party nor the court can make out the essence of the claims 'dismissal of a complaint . . . is unexceptionable.'" *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) (internal quotation marks omitted) (affirming dismissal of plaintiff's "kitchen sink" complaint where its "convoluted language . . . renders it unclear precisely what facts [the plaintiff] has attempted to allege" and the plaintiff made "no attempt to connect specific facts or events with the various causes of action she asserted").[11]

### C. Plaintiffs Have Failed to Plead the Elements of a Section 10(b) Claim (Count 6)

In addition to all of the above, Plaintiffs' claim under Section 10(b) of the Securities Exchange Act and Rule 10b-5 thereunder also fails for additional reasons. To state a claim under these provisions, Plaintiffs must plead "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. ___, 131 S. Ct. 1309, 1317-18 (2011) (internal quotation marks omitted).[12]

---

[11] Plaintiffs' *pro se* status cannot forestall dismissal with prejudice, especially in light of the Court's suggestion that Plaintiffs engage an attorney. *See Gu v. Abraham*, 504 F. App'x 513, 514 (7th Cir. 2013) (affirming dismissal with prejudice of *pro se* plaintiff's second amended complaint because the plaintiff "did not comply with the court's request that he clarify his claims" as his amended complaint "exhibits the lack of organization and basic coherence that renders a complaint too confusing to determine the facts that constitute the alleged wrongful conduct").

[12] Even if Plaintiffs are attempting to plead a manipulation claim, that would not change the calculation, as the "essential elements" of a 10b-5 manipulation claim are the same as a deception claim, including scienter, reliance, and loss causation. *McNichols v. Loeb Rhoades & Co.*, 97 F.R.D. 331, 336 (N.D. Ill. 1982).

*First,* the Amended Complaint contains no allegation that any Defendant acted with scienter — the Amended Complaint does not even address the element.

*Second*, the Amended Complaint does not allege reliance or any connection between any alleged misrepresentations or omissions and the purchase of their variable annuity. Plaintiffs do not claim that they ever received, read, or relied on the documents cited in the Amended Complaint, or on the allegedly misleading statements. Indeed, for some of the challenged statements (*e.g.,* Am. Compl. ¶¶ 56-57), reliance would be impossible because they allegedly are dated *after* the time of purchase. *See Zerger*, 2009 WL 3380653, at *4 ("The Seventh Circuit has explicitly held that 'post-purchase statements cannot form the basis of Rule 10(b)-5 liability, because the statements could not have affected the price at which plaintiff actually purchased.'" (quoting *Roots P'ship v. Lands' End, Inc.,* 965 F.2d 1411, 1420 (7th Cir.1992)).[13]

*Finally,* Plaintiffs have failed to plead loss causation because there is no pleaded nexus between any asserted wrongdoing and loss. *See In re Sara Lee Corp. Sec. Litig.*, 2006 WL 1980199, at *8 (N.D. Ill. July 10, 2006) (granting defendant's motion for judgment on the pleadings on loss causation grounds where plaintiffs did not "plead a specific causal relation, or 'nexus,' between [defendant's] alleged misstatements and their losses"); *see also Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 842 (7th Cir. 2007) ("To plead loss causation, the plaintiff must allege that it was the very facts about which the defendant lied which caused its injuries.") (internal quotation marks omitted). Here, the two paragraphs that address losses (Am. Compl. ¶¶ 66-67) allege only that Plaintiffs' contract value decreased when

---

[13] *See also Coe v. Circle Exp., Inc.*, 1990 WL 37260, at *7 (N.D. Ill. Mar. 5, 1990) ("for a statement to be actionable under 10b-5, a plaintiff must rely on the misrepresentations of the defendant in purchasing securities" and therefore "any statements made *after* plaintiffs bought their stock cannot be actionable").

the S&P 500 index increased. Plaintiffs never explain how any asserted fraudulent conduct by any Defendants caused the asserted loss.

### D. Plaintiffs Cannot State a Claim for Violation of Section 12(d)(1) of the Investment Company Act (Count 9)

Finally, Plaintiffs assert liability under Section 12(d)(1) of the Investment Company Act. Am. Compl. ¶ 92-94. However, this provision of the Investment Company Act restricts a company's ability to acquire a large ownership stake in another company. *See* 15 U.S.C. § 80a-12(d)(1). The Amended Complaint contains no allegations of any kind supporting any such claim. This provides an additional basis for dismissal of this claim.

### CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Respectfully submitted,

*/s/ Bruce V. Spiva*

Bruce V. Spiva (No. 443754)
THE SPIVA LAW FIRM PLLC
1776 Massachusetts Ave, N.W., Suite 601
Washington, D.C. 20036
Tel.: (202) 785-0601
Fax: (202) 785-0697
Email: bspiva@spivafirm.com

Stephanie A. Scharf (No. 6191616)
George D. Sax (No. 6279686)
SCHARF BANKS MARMOR LLC
333 West Wacker Drive, Suite 450
Chicago, Illinois 60606
Tel: (312) 726-6000
Fax: (312) 726-6045
Email: sscharf@scharfbanks.com
       gsax@scharfbanks.com

*Counsel for Defendants Prudential Financial, Inc., Prudential Insurance Company of America, the Pruco Life Insurance Company, AST Investment Services, Inc., Prudential Annuities, Inc., Prudential Annuities Distributors, Inc., Pruco Securities LLC, Global Portfolio Strategies, Inc., Prudential Bache Securities LLC, Prudential Investment Management Services LLC, Prudential Investments LLC, Prudential Investment Management, Inc., Prudential Retirement Insurance and Annuity Company, Jennison Associates LLC, Quantitative Management Associates LLC, John Robert Strangfeld Jr., Mark Brown Grier, Richard J. Carbone, Judy Ann Rice, Christine C. Marcks, Christopher Hagan, and Michael Weissberger*

## CERTIFICATE OF SERVICE

I, George D. Sax, an attorney, certify that on November 6, 2014 the foregoing PRUDENTIAL DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS was served on all parties listed below via the court's ECF System.

*/s/ George D. Sax*

| | |
|---|---|
| *Pro Se Plaintiffs*: | Michael H. Wu |
| | Christine T. Wu |
| | 40 E. 9th Street |
| | Apt No. 1805 |
| | Chicago, Illinois 60605-2152 |
| | E-mail: mhw2000usa@gmail.com |
| | E-mail: christinethwu@gmail.com |
| *Attorneys for Citigroup, Inc.; Citigroup Global Markets, Inc.; John P. Havens and Xial-mei (Linda) Wang*: | Miriam G. Bahcall |
| | Julia D. Riedel Emfinger |
| | GREENBERG TRAURIG, LLP |
| | 77 W. Wacker Drive, Suite 3100 |
| | Chicago, Illinois 60601 |
| | T: 312.456.8400 |
| | E-mail: bahcallm@gtlaw.com |
| | E-mail: emfingerj@gtlaw.com |
| *Attorneys for LSV Asset Management, Marsico Capital Management, and William Blair & Company LLC*: | Norman K. Beck |
| | Cristina Covarrubias |
| | WINSTON & STRAWN LLP |
| | 35 W. Wacker Drive, Suite 4200 |
| | Chicago, Illinois 60601 |
| | T: 312.558.9504 |
| | E-mail: nbeck@winston.com |
| | E-mail: ccovarrubias@winston.com |
| *Attorneys for T. Rowe Price Associates, Inc.*: | Matthew P. Connelly |
| | Patrick W. Chinnery |
| | Brandon A. Carnes |
| | ROCK FUSCO & CONNELLY, LLC |
| | 321 N. Clark Street, Suite 2200 |
| | Chicago, Illinois 60654 |
| | T: 312.494.1000 |
| | E-mail: mpc@rockfuscoconnelly.com |
| | E-mail: pchinnery@rockfuscoconnelly.com |
| | E-mail: bcarnes@rockfuscoconnelly.com |